**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SINRI KRISH,<br><br>       **PLAINTIFF,**<br><br>  **v.**<br><br>G.R. BALASUBRAMANIAM, an individual, and DOES 1 through 10, inclusive<br><br>       **Defendant.** | **1:06-CV-01030 OWW TAG**<br><br>**MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS MOTION TO DISMISS BASED ON FORUM NON CONVENIENS** |

## 1.   INTRODUCTION

Before the court for decision is Defendant G.R. Balasubramaniam's motion to dismiss this action based on the common law theory of forum non conveniens.  This action concerns a dispute between Plaintiff and Defendant over  payments made pursuant to a contract for the sale of real property located in Coimbatore, India.

## 2.   FACTUAL BACKGROUND

This case concerns a contract for the sale of real property located in the Coimbatore, India.  (Doc. 1, Complaint at ¶7.) Defendant, an Indian citizen who currently resides in Bakersfield, California, has owned the property since 1988.  (*Id*. at ¶¶ 4, 10.)  Plaintiff is currently a resident of Carrollton, Texas.  (Doc. 41-2, Krish Decl., Ex. A, Filed March 23, 2007.)

**1**

1    On or about November 1, 2005, the parties entered into an

2 oral agreement to sell the property.  (Doc. 1, Compl. at ¶7.)

3 This oral agreement was reduced to a written deed of sale

4 agreement (the "Sales Agreement") in India and was signed by both

5 parties.

6    Under the sales agreement, Plaintiff was to pay Defendant

7 approximately $356,000.  (*Id.* at ¶12.)  Approximately $4,600 was

8 paid as an advance, with the balance of the total amount due on

9 the closing date of June 13, 2006.  (*Id.* at ¶13.)  Plaintiff

10 alleges that he paid Defendant an additional $139,534 toward the

11 purchase price by wire transfer on January 11, 2006, pursuant to

12 an oral agreement.  (*Id.* at ¶14.)  The wire transfer was made

13 from Plaintiff's account in Texas to Defendant's account in

14 California.  (*Id.* at ¶14 & Ex. D.)

15    Plaintiff alleges that on May 9, 2006, Defendant breached

16 and repudiated the sales agreement by advising Plaintiff in

17 writing that he refused to convey the property to Plaintiff.

18 (*Id.* at ¶15.)  Plaintiff also alleges that Defendant has refused

19 to return the $139,534 paid to him for the purchase of the

20 property and that Defendant never intended to fulfill his

21 obligations to Plaintiff under the sales agreement to sell and

22 convey the real property.  (*Id.* at ¶34.)

23    On August 7, 2006, Plaintiff filed this action based on

24 diversity of citizenship, alleging: (1) breach of oral and

25 written contract; (2) assumpsit; (3) constructive trust; (4) and

26 intentional misrepresentation.

27 //

28 //

**2**

### 3.  **STANDARD OF REVIEW**

"A district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties."  28 U.S.C. 1404(a); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1177 (9th Cir. 2006).  Plaintiffs choice of forum is entitled to deference. *Id.* A party moving to dismiss based on forum non conveniens bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal.  *Dole Food Co. v. Watts,* 303 F.3d 1104, 1119 (9th Cir. 2002).  The plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country.  *Id.*  The standard to be applied to a motion for dismissal on the ground of forum non conveniens is whether defendants have made a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or non existent. *Id.*  Forum non conveniens is an exceptional tool to be employed sparingly, not a doctrine that compels plaintiffs to choose the optimal forum for their claim.  *Id.*

### 4.  **DISCUSSION**

**A.   Availability of Alternative Forum**

A defendant seeking dismissal on forum non conveniens grounds bears the burden of demonstrating that an alternative forum exists and that it is adequate.  *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006).  Generally, an alternative forum is available where the defendant is amenable to

**3**

1   service of process and the forum provides some remedy for the

2   wrong at issue.  *Id.*   This test is easy to pass; typically, a

3   forum will be inadequate only where the remedy provided is so

4   clearly inadequate or unsatisfactory, that it is no remedy at

5   all.  *Id.*

6       Defendant has stated that he would be willing to submit to

7   the jurisdiction of Indian Courts.  There is no dispute among the

8   parties that Defendant is amenable to process in India.  The

9   parties dispute the ability of Indian courts to provide an

10  adequate remedy.

11      Establishing that an alternative forum is adequate requires

12  the defendant to establish that the foreign forum's laws provide

13  potential redress for the injury alleged.  *Tuazon* 433 F.3d at

14  1178.  Defendant argues that there is an adequate remedy

15  available under Indian law pursuant to both the express terms of

16  the sales agreement, as well as India's Specific Relief Act.  In

17  support of its motion, Defendant provides his own declaration

18  stating that the contract for the sale of real property was

19  drafted in India and is governed by Indian law.  Defendant

20  further argues that a dispute over an agreement for the sale of

21  real property in India should be decided by a court in India.

22      Defendant next argues that while Indian courts may take

23  longer to resolve this dispute, such delay is not so lengthy that

24  the remedy available would be clearly inadequate.  Plaintiff does

25  not dispute that Indian courts have authority to grant remedies

26  sufficient to resolve this dispute.  Plaintiff instead argues

27  that a resolution of this matter can be more quickly obtained in

28  the United States than in India.

**4**

1    In support of his position, Defendant offers the declaration

2 of R.M. Shanmukham, an attorney in Coimbatore, India for the past

3 fifty years.  (Doc. 53, Decl. of R.M. Shanmukham, Filed April 2,

4 2007.)  According to Mr. Shanmukham, India's laws were amended in

5 2003 to vest civil jurisdiction in the district courts and "fast

6 track" courts were created.  (*Id.*, ¶ 2)  These "fast track"

7 courts were formed to allow judges to try cases and reduce the

8 number of pending cases.  As a result, Mr. Shanmukham states that

9 delay in litigation in India is no longer an issue and that

10 disputes arising out of the District Court's jurisdiction come to

11 trial in about three years in Coimbatore.

12    In *Tuazon*, the Ninth Circuit found that Defendant met its

13 burden of showing adequacy of the Philippine court system.

14 *Tuazon* 433 F.3d at 1178.  The Defendant offered an extensive

15 affidavit by a former Justice of the Philippine Court of Appeals,

16 detailing background about the Philippines and its court system,

17 the availability of contract and tort relief, the discovery

18 process, and procedural formalities.  In this case, Defendant

19 does not provide a detailed background of Coimbatore, India and

20 its court system, the discovery process, or pretrial and trial

21 procedures.  However, Defendant does provide an affidavit from an

22 attorney with fifty years of experience, who is a member and past

23 president of the Coimbatore Bar Association.  If this attorney

24 witness has experience in Indian courts with trials, this is

25 sufficient evidence to support Defendant's claims that Indian

26 courts provide an adequate forum.

27    Plaintiff however, argues that venuing the dispute in India

28 would impose a seven to ten year delay before a final resolution

**5**

of the case.  In contrast, a trial of the case in this court is set for just over a year, on May 28, 2008.  (Doc. 32, Scheduling Conference Order, Filed December 19, 2006.)  Plaintiff does not argue that the delay in India will be so severe that it would deprive Plaintiff of a remedy.  Rather, Plaintiff argues  that India is not an adequate forum because resolution of the dispute would take longer in Indian courts than in American courts.  This argument is insufficient to establish Indian courts are an inadequate forum.

A litigant asserting inadequacy or delay must make a powerful showing.  *Tuazon* 422 F.3d at 1179.  Because litigation delay is so pervasive, minor delay does not serve to undermine the adequacy of an alternative forum.  *Bhatnagar by Bhatnagar v. Surrendra Overseas,* 52 F3d 1220, 1227 (3rd Cir. 1995).  Delays of a few years are of no legal significance in a forum non conveniens calculus.  *Id.*

Plaintiff does not argue that the prospect of a judicial remedy in India is so temporally remote that it is no remedy at all.  *see, Bhatnagar by Bhatnagar,* 52 F.3d at 1227-1228 (holding that a delay of 15-20 years is extreme and finding no remedy as a result of the delay.)  Plaintiff has not made a powerful showing that the delay in India is so severe that it undermines the adequacy of Indian courts as an alternative forum.[1]

---

[1] Plaintiff also argues that India is an inadequate forum because Plaintiff will be subject to excessive costs in the amount of $68,000 to commence the case.  Plaintiff does not say he is unable to provide for the cost or that he cannot recover the cost under Indian Law.  Plaintiffs showing of the cost of suit is insufficient to undermine the adequacy of Indian courts

**6**

**B.    Balance of Factors**

Even when an adequate alternative forum exists, plaintiff's original choice of forum will not be disturbed unless the "private interest" and the "public interest" factors strongly favor dismissal.  *Tuazon,* 433 F.3d at 1180.

**i.    Private Factors**

Courts apply a seven part test to evaluate private interest factor considerations: (1) the residence of the parties and witnesses, (2) the forum's convenience to the litigants (3) access to physical evidence and other sources of proof, (4) whether unwilling witnesses can be compelled to testify, (5) the cost of bringing witnesses to trial, (6) the enforceability of the judgment, (7) any practical problems or other factors that contribute to an efficient resolution.  *Id.*  In considering the location and availability of evidence and witnesses the crucial focus is not on the number of witnesses or quantity of evidence in each locale, but rather the materiality and importance of the anticipated evidence and witness' testimony and their accessibility and convenience to the forum.  *Id.*

**a.    Residence of the Parties and Forum's Convenience to Litigants**

It is undisputed that Plaintiff and Defendant both presently reside in the United States and did so at the time the case commenced.  Defendant argues that Plaintiff is not a resident of the United States, but rather a resident of India, who

_____

as an alternative forum.

**7**

temporarily resides in the United States and has the intention of
returning to India.  Defendant argues that Plaintiff's choice of
forum should be given less deference because he is a foreign
citizen.  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143
(2001)(noting that a foreign plaintiff's choice deserves less
deference).

Plaintiff, however, has provided evidence of his Certificate
of Naturalization, evidencing that he has been a United States
citizen since 2002.  (Doc. 41-2, Krish Decl., Ex. A, Filed March
23, 2007.)  Plaintiff has also lived and worked continuously in
the United States since 1992 (15 years) and permanently resides
in Texas. (Doc. 41-1, Pl.'s Opposition, Filed March 23, 2007.)
Plaintiff neither owns nor leases any real property in India.
*Id.*  Plaintiff has only been out of the United States for
business or vacation for no more than five weeks at a time and
has been an employee of a United States company in Dallas, Texas
since 1998.  *Id.*  Defendant is also a United States Citizen who
lives in Kern County, California.  *Id.*

The first and second factors favor retaining the case in
California.  Plaintiff is not a foreign party.  Neither party is
a resident of India and both reside in the United States.  It is
not unreasonable that Defendant should defend a lawsuit in a
court of his state of residence rather than in India.  *see,*
*Tuazon* at 433 F.3d at 1181 (upholding the district court's
reasoning that Washington was a more adequate forum than the
Philippines because neither party was a resident of the
Philippines, both parties were residents of the United States,
and it was not unreasonable to expect Defendant to litigate an

**8**

action in Washington given its extensive operations in the state for half a century.)  Also, a California forum is more convenient to the litigants since Defendant lives in this state and Plaintiff's travel to California is more convenient and less expensive than requiring both litigants to travel to India for the litigation.

### b.   Location and Availability of Evidence and Witnesses

The third and fourth private interest factors present a closer issue between Plaintiff and Defendant.  The dispute involves material witnesses who live abroad.  The importance of their anticipated evidence is disputed.  Defendant argues that at least nine material witnesses in this action reside in India. Defendant claims that a severe limit on access to evidence will result if the witnesses are not voluntarily produced for deposition.  Defendant contends that India is not a signatory to the Hague convention and that the parties could not engage in "cumbersome, restrictive, and time consuming letters rogatory process set forth in Fed. R. Civ. P. 28(b)."[2]

According to Defendant, Plaintiff and Defendant did not personally negotiate the sale of property in India.  Instead, Defendant argues that they negotiated the transaction through individuals who reside in India, to whom they each gave power of attorney.  Plaintiff gave his father N. Krishnasami Naidu

---

[2] However, Fed. R. Civ. P. 28(b)(3) states that "depositions may be taken in a foreign country... on notice before a person authorized to administer oaths in the place where the examination is held, either by law thereof or by the law of the United States."  Depositions in India can be and are taken under oath.

("Naidu"), a resident of India, power of attorney.  Defendant

gave S.G. Ramakumar ("Ramakumar"), also a resident of India,

power of attorney.  Defendant also claims that these are the two

most critical witnesses but that there "are additional percipient

witnesses and attorneys in India who worked on the case" and who

will be required to testify to the transaction, the alleged

presuit litigation, and as experts on Indian law."  However,

Defendant has not provided names of these witnesses and does not

explain how, aside from Naidu and Ramakumar, the witnesses are

material to the case.

Plaintiff rejoins that the seminal and material witnesses

are the parties who formed the contract and whose intentions and

performance are in dispute.  Plaintiff argues that he and

Defendant engaged exclusively in all negotiations regarding

Plaintiff's purchase of the property while both were in the

United States.  Plaintiff further argues that all key documents

are located in the United States.  Plaintiff indicates the facts

are as follows:

1.    In June 2005, while traveling in India, Plaintiff

      saw the Property at issue and learned from

      Ramakumar, Defendant's agent, that it was for

      sale.  Plaintiff then obtained Defendant's contact

      information.  (Doc. 41-2, Krish Declaration, ¶¶ 7-

      8.)

2.    Plaintiff claims that he did not negotiate any

      issues related to the purchase of the property

      with Ramakumar.  (*Id.* at ¶ 9.)

3.    Upon Plaintiff's return to the United States,

Plaintiff claims that he had about 30 telephone conversations with Defendant in which they negotiated the terms for purchase of the property including price, advanced deposits for the property, logistics of having the power of attorney agents in India sign the Sales Agreement, and the date of close of escrow. Plaintiff submitted his phone records in an attachment to his declaration as evidence that such conversations took place in the United States. (*Id.* at ¶ 10.)

4. Each telephone conversation took place in the United States. (*Id.*)

5. Plaintiff also states in his declaration that he exchanged three emails and two faxes where various terms of the property purchase were discussed. (*Id.*)

6. On November 1, 2005, Plaintiff entered into an oral agreement to purchase the property free of all encumbrances, via telephone with Plaintiff in Texas and Defendant in California. Plaintiff claims that as part of the agreement, Plaintiff advanced to Defendant the sum of $139,534 on January 11, 2006 by wire transfer from his Texas bank to Defendant's bank in California. Plaintiff has submitted bank statements as evidence of the transfer. (Doc. 41-4, Krish Decl., Ex. C and Ex. D., Filed March 23, 2007.)

7.    Thereafter the parties agreed via telephone, email, and fax negotiations in the United States, to enter into a written agreement for registration in India.  It was then that Plaintiff appointed his father, Mr. Nammalwar, to be his power agent and instructed him to sign the Sales Agreement in India.  Once the purchase was finalized, Plaintiff asked an Indian attorney, Mr. Chandrasekaran to conform the agreement to Indian law, and print it on required paper with the appropriate stamps. (*Id.* at ¶ 13.)

8.    On December 14, 2005 the Sales Agreement was executed. Plaintiff argues that the Power Agents did not negotiate any terms or conditions with each other or anyone else. (*Id.* at ¶ 14.)

There is a significant factual dispute between the parties as to who are the most critical witnesses.  Defendant argues that the most critical witnesses are the Power Agents who signed the sales agreement in India as well as the attorneys in India who assured that the agreement conformed to Indian law.  Plaintiff argues that the most critical witnesses are the Plaintiff and Defendant because they negotiated the Sales Agreement.  Plaintiff notes that Defendant has never disputed the terms of the agreement and that there is no compelling reason to require testimony from the Power Agents since they could only testify as to the fact that they executed the document under Indian law. Plaintiff provides the court with the following list of witnesses arguing that they are peripheral and that their testimony can be

**12**

obtained by deposition:

    1.   Mr. Ramakumar & Mr. Krishnasami Nammalwar (identified as N. Krishnasami) were the Power Agents and did not negotiate any terms of the Sales Agreement with anyone.  (Doc. 41-4, Nammalwar Decl. ¶7, Filed March 23, 2007.)

    2.   Mr. Narayannan is employed by the State Bank of India, which granted Plaintiff a loan in March 2006 to pay the balance due under the Sales Agreement; his testimony will likely be limited to the loan terms and can be obtained by deposition. (Doc. 41-8, Narayanan Decl. ¶¶2-6, Filed March 23, 2007.)

    3.   Mr. Ar. D. Prabu is an engineer for Prabu Associates in Coimbatore, who performed a valuation of the Property in March 2007; his testimony will likely be limited to his valuation report and can be obtained by deposition. (Doc. 41-6, Declaration of Ar. D. Prabu ("Prabu Decl.") at ¶¶2-5, Filed March 23, 2007.)

    4.   Mr. Krishnasami Sivaraveendran (identified as Siva Ravi) is the person who arranged for the March 2006 publication of the notice in an Indian newspaper; the notice speaks for itself. Even if required to testify, his testimony can be obtained by deposition.  (Doc. 41-7, Declaration of Krishnasami Sivaraveendran ("Sivaraveendran Decl.") ¶¶3-5, Filed March 23, 2007.)

**13**

5.   Mr. S. Chandrasekaran, an Indian attorney retained
     by Plaintiff, who prepared the Sales Agreement in
     compliance with Indian law (required language,
     type of paper, endorsements etc.), undertook a
     title search to ensure the Property was free of
     encumbrances, and prepared the March 2006 notice;
     his testimony can be obtained by deposition. (Doc.
     41-5, Declaration of S. Chandrasekaran
     ("Chandrasekaran Decl.") ¶¶3-10, Filed March 23,
     2007.)

6.   Mr. S. Dorairaj is Defendant's Indian lawyer.
     According to Defendant, this witness became
     involved only after Plaintiff allegedly breached
     the Sales Agreement and the basis for his
     testimony is therefore unclear.

7.   Dr. V. Ramachandran, his real estate company (G.
     Ramakrishnan), and his attorney (Mr. M.K. Sampath)
     relate to Defendant's allegation of a "cloud on
     the title" to the Property, and that Ramachandran
     had an interest in the Property through an alleged
     agreement made in December 2003; even if true,
     this is a legal question under Indian law, which
     can be dealt with by expert declarations or
     deposition. (Doc. 41-10, Karthikeyan Decl. at
     ¶¶12-16, Filed March 23, 2007.)

Plaintiff also argues that the key witnesses are willing to submit themselves to deposition and voluntarily travel to the United States for trial.

**14**

1    Lastly, Plaintiff claims that access to the relevant

2 documents is in the United States.  All negotiations were

3 conducted in the United States and all relevant documents,

4 including the sales agreement, assignment of powers of attorney,

5 bank records, loan documents, and land valuation on the property,

6 are in the United States.

7    The factual disputes as to the role of the witnesses and how

8 much of the agreement was negotiated in the United States instead

9 of in India makes this a close call.  Whether this case is tried

10 in the United States or in India, evidence will inevitably be

11 drawn from both places.  Defendant concedes that this is not the

12 type of case where it is necessary to view the property in

13 question.  However, because both parties invoked the assistance

14 of Power Agents in India, proof of the signing of the contract

15 and the circumstances surrounding that event will likely be in

16 India.  It is factually unclear how much or how little a role the

17 Power Agents played in the negotiations.

18    Plaintiff represents that all of the witnesses he may rely

19 upon in this case have stated under penalty of perjury that they

20 are willing to submit to a deposition in India under oath and

21 willing to travel to the United States for trial.  According to

22 Plaintiff, Defendant's concern with compulsory process to compel

23 witness attendance should not be an issue if the parties

24 cooperate.  Defendant's power of attorney, Mr. Ramakumar is his

25 uncle and Mr. Dorairaj is his counsel in India.  Plaintiff points

26 out that they have every motivation to have their depositions

27 taken and to come to trial in order to assist defendant.

28    On balancing the parties' factual contentions, the third and

**15**

1   fourth private interest factors weigh in favor of retaining this

2   matter in the original forum in California.  No matter where the

3   case is tried, witnesses will travel from or to India.

### c.   Costs of Bringing Witnesses to Trial

5       A factual dispute also exists as to the costs of litigating

6   this case in the United States rather than in India.  Defendant

7   argues that his costs of bringing witnesses from India to the

8   United States would be exorbitant.  Defendant claims that he will

9   incur substantial expert witness fees, some of which is entirely

10  unnecessary were the case to go forward in India.  Defendant

11  estimates that the costs would be well in excess of $25,000.00.

12  Also, Defendant states that he is considering instituting a cross

13  claim against Plaintiff based on Plaintiff's decision to publish

14  a higher purchase price for the property than appears in the

15  Sales Agreement.  Defendant argues that this would result in

16  additional costs and fees for him if he were forced to file it in

17  Fresno because it would require him to incur more travel expenses

18  for additional witnesses to his cross claim.  The latter is

19  speculative as such a claim is not before the court.  This is a

20  simple dispute over a land sale agreement.  Although experts on

21  Indian law may be required by each side it is difficult to see

22  what issues create the need for other experts, other than

23  valuation if that is in issue.

24      Plaintiff argues that it would cost an estimated $68,800 to

25  commence a case in India leading to a civil trial regarding a

26  dispute over real property.  Plaintiff points out that to

27  litigate this case in India would require the parties to travel

28  to India several times for their depositions and possibly for

**16**

trial.  Plaintiff would have to pay attorneys fees in India to litigate this case from its inception, duplicating efforts and costs, since the case has already been instituted in California.

In response to Defendant's contention that there would be high costs in bringing witnesses from India to California, Plaintiff argues that such costs should not be necessary since witnesses can be deposed by sworn transcript and may not have to attend trial.  Plaintiff is also willing to pay the costs of bringing his own witnesses to trial.  According to Plaintiff, the increased speed and ease of travel and communication makes the possibility of obtaining witness testimony without their presence less costly and burdensome.

Lastly, the possibility that Defendant might file a counter claim in India does not have much weight in the analysis since Defendant may file the counterclaim in this pending action.  On balance, the economics of bringing a few witnesses from abroad to California will be less costly than moving the case and trial, including both parties, to India.  *see, Tuazon* 433 F.3d at 1181.

The fifth factor also weighs in favor of retaining the case in California.

### d.   Compelling Witnesses to Testify and Enforceability of Judgment

Defendants argue that there is currently no mechanism to compel witnesses in India to testify.  However, Fed. R. Civ. P. 28(b)(3) states that "depositions may be taken in a foreign country... on notice before a person authorized to administer oaths in the place where the examination is held, either by law thereof or by the law of the United States."  Depositions in

**17**

India can be and are taken under oath.  Further, Plaintiff points out that witnesses material to this case, such as Defendant's Power Agent who is also his uncle and Defendant's attorney, have an interest in participating as witnesses in this case.  Also, Plaintiff argues that enforcing a judgment in California would be easier than enforcing a judgment in India.  Defendant is a resident of California and has a bank account in California. Defendant does not address the enforceability of judgment issue. The sixth and seventh factors also weigh in favor of retaining the case.  The court recognizes that the contry of India has treaties with the United States and that the Indian legal system recognizes affidavits and the taking of testimony under oath.

### ii.  Public Factors

In addition to the private interest factors, courts must consider five public interest factors: (1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum.  *Id.*

### a.  The Local Interest in the Lawsuit

Defendant argues that it cannot seriously be disputed that there exists no connection between the instant dispute and the forum selected by Plaintiff.  According to Defendant, there is no local interest in having this foreign breach of contract action decided locally.  However, California ties to this litigation are prevalent.  Defendant is a United States citizen who resides in Tulare County, California.  He has lived and worked in California for 23 years.  It is alleged that all negotiations for the

**18**

1  purchase of the real property were conducted with Defendant in

2  California.  It is alleged that Defendant reviewed the sales

3  agreement in California, that Defendant signed the assignment of

4  power of attorney in California, and that Defendant executed the

5  Sales agreement in California.  These facts are sufficient to

6  establish a substantial local interest in the resolution of this

7  matter in California.

### b.   The Court's Familiarity With Indian Law

9      Defendant also argues throughout his moving papers that this

10  court has previously indicated that Indian law likely controls

11  this case.  *see,* (Doc. 32, Scheduling Conference Order, Filed

12  December 19, 2006.)(noting as an uncontested legal issue that

13  Indian law applies to the construction and interpretation of the

14  Sales Agreement.)  However, in its Order Denying Defendant's

15  Motion to Dismiss issued on October 10, 2006, the court also

16  noted that federal courts routinely apply the law of other

17  countries; the determination that another country's law controls

18  does not automatically render improper venue in a United States

19  court.  *Rivendell Forest Prods., Ltd. v. Canadian Pac. Ltd.*, 2

20  F.3d 990, 994 (10th Cir. 1993)(choice of law issue is not

21  dispositive of venue analysis).  The need to apply unfamiliar

22  foreign law is just one factor that may be considered in

23  determining whether to dismiss a case for *forum non conveniens*.

24  *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 260 (1981).

25  Though Indian law may apply to the construction of the agreement,

26  this court may properly apply Indian law to the pending

27  litigation.  The court has previously tried a complicated

28  extradition proceeding, where India was the petitioner seeking

**19**

1  extradition under a treaty between United States and Indian law.

2  *Barapind v. Enomoto,* 400 F.3d 744 (9th Cir. 2005).

3  **c.   The Burden on Local Courts and Juries**

4      Defendant also argues that a local jury should not be

5  burdened with an action having absolutely no connection with the

6  Eastern District.  However, this case does have a connection with

7  the Eastern District since the Defendant is a resident of Kern

8  County, California and both parties are U.S. citizens.  Local

9  courts and local juries routinely address subjects totally

10 foreign to them, ranging from the foreign language of patent

11 disputes to cases involving foreign companies, foreign cultures,

12 and foreign languages.  *see*, *Piper Aircraft* 454 U.S. at 257; *see*

13 *also, Tuazon* 433 F.3d at 1181-1182.  Given that Defendant is a

14 resident of the Eastern District of California, it will not be an

15 unfair burden on local courts and juries to adjudicate a

16 controversy involving a resident of Tulare county.

17 **d.   Congestion in the Courts**

18     Defendant provides no evidence of the calendar in any Indian

19 court where this case may be tried.  In the Fresno Division of

20 the Eastern District of California, although the overall caseload

21 is around 1,000 cases per judge, every civil case set for trial

22 of this court in the past fifteen years has been tried, on or

23 near the scheduled trial date.

24 **e.   The Costs of Resolving a Dispute Unrelated to A**
       **Particular Forum**

25
   The costs of resolving the dispute appear to be higher if

26 the case is litigated in India.

27 //

28

1

**5.   <u>CONCLUSION</u>**

2      For all the reasons state above, Defendant's motion for

3  forum non conveniens is **DENIED.**

4

5

6

7

8  IT IS SO ORDERED.

9  **Dated:    April 23, 2007**          _____/s/ **Oliver W. Wanger**_____
                                        UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28